———————

No. 95-1173

———————

David Simmons,                          *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
     v.                                 *   District Court for the
                                        *   Eastern District of Missouri.
Mike O'Brien, Detective,                *
Captain; William Turner,                *
Lieutenant; Don Gault,                  *
Detective; Patrick Conway,              *
Detective; M. J. Walsh,                 *
Detective; City of Overland,            *
                                        *
            Appellees.                  *

———————

            Submitted:  September 12, 1995

                Filed:  March 4, 1996
                    ———————

Before WOLLMAN, MAGILL, and LOKEN, Circuit Judges.

———————

MAGILL, Circuit Judge.

     David Simmons appeals the district court's[1] dismissal without prejudice of his 42 U.S.C. § 1983 claim that defendants, officers of the St. Louis Metropolitan Police Department, coerced his confession through the use of racial slurs and excessive physical force.  Because the claims are barred by issue preclusion and should have been dismissed with prejudice, we affirm in part and

———————————————————

     [1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, adopting the review and recommendation of the Honorable William S. Bahn, United States Magistrate Judge for the Eastern District of Missouri.

reverse in part.

## I.

On August 20, 1990, officers of the St. Louis police department questioned Simmons about the murder of Meredith Marshall, Simmons' girlfriend's mother, and the theft of Marshall's car. After several hours of questioning, Simmons made a videotaped confession. Following the videotaped confession, questioning continued for two more days, during which the police took more statements.

Prior to trial, on August 21, 1991, Simmons moved to suppress the confession and any other statements made to the police on the grounds that his Fifth and Fourteenth Amendment rights were violated. Simmons alleged that he was not specifically made aware of his Miranda rights; that the length and nature of the interrogation were inherently coercive given his education, background, and physical and mental condition; and that he was subjected to physical and psychological duress during the interrogation and the taking of his confession.

The trial court denied the motion to suppress on September 13, 1991. Following a jury trial on October 24, 1991, Simmons was found guilty of second degree murder and first degree burglary. He was sentenced to life in prison for the murder conviction and fifteen years for the burglary conviction. Simmons' petition for postconviction relief was denied. In his subsequent direct appeal, Simmons alleged procedural errors as grounds for reversal, but he did not challenge the sufficiency of the evidence nor did he challenge the admission of the confession. The Missouri Court of Appeals upheld both the conviction and the denial of postconviction relief. State v. Simmons, 865 S.W.2d 893 (Mo. Ct. App. 1993).

Simmons then brought this § 1983 action seeking damages,

alleging that defendants used excessive physical force, psychological duress, and racial slurs in coercing his confession.[2] Specifically, Simmons contends that he was choked several times, kicked in the stomach, and punched in the face; that pins were continually stuck in his hands until he confessed; and that, when he would not confess, one officer threatened to "take this nigger somewhere in (sic) kill him." Further, Simmons maintains that the police repeatedly referred to him as "nigger" and that they told him they were trying to coerce his confession solely because he is an African-American.

The trial court granted summary judgment for the defendants based on Heck v. Humphrey, 114 S. Ct. 2364 (1994), holding that until a habeas court ruled on the validity of Simmons' conviction, a ruling on the excessive force and racial slurs claims would be premature. This appeal followed.

## II.

As a threshold matter, we must determine whether Simmons' claim for damages is presently cognizable under § 1983. In Heck, supra, the Supreme Court held that where "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction," id. at 2372, a cause of action has not accrued unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated by a state court or called into question by a federal habeas court. Id. Where, however, "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." Id.

---

[2]The Fifth Circuit has held that allegations of racial insults and harassment can present a cognizable claim under § 1983. See Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989) (en banc), overruled on other grounds by Harper v. Harris County, Tex., 21 F.3d 597 (5th Cir. 1994).

The Court offered an example of a § 1983 suit that should be allowed to proceed:  suits for damages for allegedly unreasonable searches, even when such searches yielded evidence admitted at trial, resulting in conviction.  Because of doctrines such as independent source, inevitable discovery, and, most importantly, harmless error, "such a § 1983 action, even if successful, would not _necessarily_ imply that the plaintiff's conviction was unlawful," and thus the action should proceed.  _Id._ at 2372 n.7.

We believe that this reasoning should be extended to Fifth Amendment claims challenging the voluntariness of confessions.  In _Arizona v. Fulminante_, 499 U.S. 279 (1991), the Supreme Court held that, in terms of effect on trial, there was no qualitative distinction between the admission at trial of illegally seized evidence and the admission of involuntary confessions.  _Id._ at 310.  In applying harmless error analysis to a confession obtained in violation of the Fifth Amendment, the Supreme Court noted:

> The admission of an involuntary confession is a "trial error," similar in both degree and kind to the erroneous admission of other types of evidence.  The evidentiary impact of an involuntary confession, and its effect upon the composition of the record, is indistinguishable from that . . . of evidence seized in violation of the Fourth Amendment . . . .

_Id._

Because harmless error analysis is applicable to the admission at trial of coerced confessions, judgment in favor of Simmons on this § 1983 action challenging his confession will not _necessarily_ demonstrate the invalidity of his conviction.  _See_ _Heck_, 114 S. Ct. at 2372 n.7.  Thus, Simmons' cause of action has accrued.

**III.**

At issue is whether Simmons' § 1983 claims are barred by issue

-4-

preclusion because the excessive force and racial slurs claims were necessarily litigated and decided against Simmons at the state suppression hearing.  We hold that they are.

**A.**

Under issue preclusion (collateral estoppel), "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Allen v. McCurry, 449 U.S. 90, 94 (1980) (citing Montana v. United States, 440 U.S. 147, 153 (1979)); see also Restatement (Second) of Judgments § 27 (1982).

This preclusion principle is rooted in concerns of judicial economy. By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, issue preclusion acts to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  McCurry, 449 U.S. at 94 (citing Montana, 440 U.S. at 153-54); see also University of Tenn. v. Elliott, 478 U.S. 788, 798 (1986) (noting that preclusion principles "enforce repose").

Of course, "central to the fair administration of preclusion doctrine" is the notion that a party will be bound only if it had "an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding."  Restatement (Second) of Judgments § 28 cmt. j. Only when a party has previously had such a full and fair opportunity to litigate that issue does the benefits of preclusion outweigh the countervailing due process concerns present whenever a party is estopped from raising a claim.  See Blonder-Tongue Lab., Inc. v. University of Ill. Found., 402 U.S. 313, 328-30 (1971).

This deference to prior adjudication extends not only to antecedent decisions of federal courts, but to those of the state courts as well. Under the federal full faith and credit statute,

> judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . .

28 U.S.C. § 1738 (1988). Thus, federal courts must give preclusive effect to state court judgments, and the scope of the preclusive effect is governed by the law of the state from which the prior judgment emerged. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). This deference "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." McCurry, 449 U.S. at 95-96 (citing Younger v. Harris, 401 U.S. 37, 43-45 (1971)).

Prior state court adjudications are given preclusive effect even in later federal § 1983 actions. In McCurry, the Supreme Court noted that, while § 1983 "alter[s] the balance of judicial power between the state and federal courts," McCurry, 449 U.S. at 99, nothing in § 1983 or its legislative history suggests that Congress intended to repeal or restrict the traditional doctrines of preclusion. Id. at 98-101. The Court reasoned that the Civil Rights Acts were passed to allow "federal courts to step in where the state courts were unable or unwilling to protect federal rights," id. at 101; to the extent that issue preclusion only applies where a party had a full and fair opportunity to litigate the issue in the first proceeding, the preclusive effect of state judgments is not incompatible with § 1983. Id.

When a federal constitutional issue is previously decided in a state criminal proceeding following a full and fair hearing, issue preclusion will therefore bar relitigation of that issue in

-6-

a § 1983 action.  McCurry, 449 U.S. at 103-04; Munz v. Parr, 972 F.2d 971, 973 (8th Cir. 1992).[3]

**B.**

We look to the Missouri law of issue preclusion in determining the preclusive effect given to the state trial court's decision to admit the confession into evidence.  See Baker v. McCoy, 739 F.2d 381, 384 (8th Cir. 1984).  In Missouri, issue preclusion will apply when: (1) the issue in the present action is identical to the issue decided in the prior adjudication; (2) the prior adjudication resulted in judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or is in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.  State ex rel. Haley v. Groose, 873 S.W.2d 221, 223 (Mo. banc 1994).

The last three elements are clearly met in this case.  Simmons' conviction and the denial of the motion to suppress were on the merits, and Simmons was a party to the prior proceeding.  Further, the state, through the suppression hearing, afforded Simmons a full and fair opportunity to litigate the claims now raised in his § 1983 action, and he had full incentive to litigate the issues.

As to the first element, even though the state trial judge made no explicit findings of fact and law when he overruled the motion to suppress, we are satisfied that, on the record before us, the issues of excessive use of force and racial slurs and the

---

[3]While McCurry dealt with a Fourth Amendment violation, its reasoning has been extended to Fifth Amendment claims.  Baker v. McCoy, 739 F.2d 381, 384 (8th Cir. 1984); Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1994).

voluntariness of Simmons' confession were raised in the state court and necessarily decided against Simmons in that forum.

In his state motion to suppress, Simmons alleged that his confession was involuntary because he was "subjected to mental, physical, and psychological duress during said interrogation." The state trial judge rejected this contention. Because coerced, involuntary confessions are inadmissible at trial, see Colorado v. Connelly, 479 U.S. 157, 163 (1986), we may properly infer that, by admitting the confession into evidence, the state trial judge considered the confession voluntary and not coerced.

It is this same issue, the voluntariness of his confession, that Simmons raises in his § 1983 action. Although Simmons protests that he is asserting an excessive use of force claim and an equal protection claim apart from challenging the confession, this contention is belied by the language of his complaint. In four separate counts in his complaint, Simmons alleges that police used excessive physical force and violated his equal protection rights. In each count, Simmons goes on to allege that police officers intentionally used such physical and mental abuse to coerce his confession and that the abuse resulted in such a coerced confession. For example, in Count I, Simmons alleges that excessive force was used against him and that such force was "intentionally used to coerce Plaintiff into confessing," and that, as a result of such physical abuse, plaintiff was in fact "coerced into confessing to a murder which he did not commit." See Second Am. Compl., Count I. This language is repeated in Counts II, III, and V.

Based on the language of the complaint, it is clear that Simmons is ultimately challenging the voluntariness of the confession and seeking damages for a coerced confession. Any differences between the § 1983 excessive use of force claim and equal protection claim and the coercion claim asserted at the

suppression hearing "appear to us no more than cosmetic changes" made by Simmons in order to "perpetuate litigation on the same basic issues." McLaughlin v. Bradlee, 803 F.2d 1197, 1202 (D.C. Cir. 1986). Thus, the first element of issue preclusion, that the issue be raised and necessarily determined in the first proceeding, is met.[4]

Because Simmons raised the issue of coercion at the state suppression hearing, the issue was determined on the merits at the first proceeding, and Simmons was afforded a full and fair opportunity to litigate the claim, he is estopped from relitigating this issue in federal court. See Robbins v. Clarke, 946 F.2d 1331, 1334 (8th Cir. 1991) (issue preclusion is appropriate where party merely gives "slightly different verbal twist to [his] claim" and the claim is "simply the same claim repackaged").

**IV.**

The district court determined that, under Heck v. Humphrey, supra, Simmons' § 1983 claim had not yet accrued, and thus the

---

[4]We recognize that Simmons was much more explicit about the scope of his claims in his § 1983 complaint than in his motion to suppress. In support of his motion to suppress, Simmons merely stated that he was "subjected to mental, physical, and psychological duress during said interrogation." In support of his § 1983 complaint, Simmons depicts a night of torture during which officers punched and kicked him, stuck pins in him, threatened to shoot him, used racial slurs against him, and singled him out for abuse solely because of his race, all in an attempt to coerce Simmons to confess.

However, it is not required for issue preclusion that the issues be raised, or even argued, with the same level of clarity or intensity in each proceeding. For issue preclusion to apply, the issue raised in the second proceeding need only have been raised in the first proceeding by the party sought to be precluded and necessarily determined on the merits in a proceeding affording a full and fair opportunity to litigate the issue. There is no further requirement that the party actually take advantage of that opportunity to fully and fairly litigate the issue.

court dismissed Simmons' claim without prejudice.  We disagree with this conclusion and conclude that Simmons can presently raise his claims under § 1983.  However, Simmons' claims were already litigated and decided at the state suppression hearing, and he is thus precluded from relitigating them in this forum.  Accordingly, we dismiss the complaint with prejudice.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.